IRENE MEDVE
*vs.*
WILLIAM F. CHATLOS

Superior Court          Fairfield County          File No. 58665

MEMORANDUM FILED APRIL 29, 1941.

*David R. Lessler*, of Bridgeport, for the Plaintiff.

*Bartlett, Keeler & Cohn*, of Bridgeport, for the Defendant.

INGLIS, J.   From about 1920 until July, 1934, Peter Seifert was employed by the defendant in the management of and collection of rents from various real properties owned by the latter in Bridgeport.   In March, 1933, the plaintiff and Peter Seifert were married.   In March, 1934, they were in an automobile accident as a result of which Seifert was incapacitated for work until July, 1934.   He was then continued in the employ of Chatlos but was moved to New York to have charge of certain properties there.

On Monday, November 18, 1935, the defendant discovered that Seifert had committed defalcations of his collections made in Bridgeport and a brief preliminary investigation indicated that those defalcations amounted to a very large sum.   Chatlos called Seifert on the phone, told him of his discovery and directed him to come in and see Chatlos.   Seifert immediately

told his wife that his defalcations, of which she was already aware in a general way, had been discovered and they immediately agreed that in order to save disgrace and possibly Seifert's job with Chatlos they would have to do all they could to make restitution. They accordingly both went to see Chatlos at his office in the late afternoon or evening of that same day. At that time Chatlos told them that the amount of the defalcation was undetermined but that judging from the information at hand it might run to $50,000. He reminded them that he had a surety company bond in the sum of $2,000 which Seifert had furnished and that unless some restitution were made he would turn the matter over to the bonding company. Further than that he made no threats of criminal prosecution at any time. The plaintiff and her husband than offered to turn over to Chatlos all the property they had. He asked them what that was and they told him that they owned a house and lot on North Summerfield Avenue in Bridgeport, a vacant lot in Fairfield, an automobile and a claim for damages arising out of the automobile accident which had occurred in March, 1934. As a matter of fact the real estate then stood in the plaintiff's name but had all been acquired with Seifert's funds. The house and lot was worth $5,000 and was subject to a mortgage for $3,922.04 on which the balance due was about $3,400. The lot in Fairfield was worth about $500. The claim for damages turned out to be worthless. The defendant did not then know that the real estate was in the plaintiff's name but understood that it was Mr. Seifert's property. At this interview of November 18th, the defendant told the Seiferts that he wanted to consult his attorney as to the advisability of accepting their proposition and would let them know.

The defendant did consult his attorney, Mr. Berman, and notified Seifert that he would accept the proposition. He told Seifert to go to Berman and sign the necessary papers. Before the Seiferts went to Mr. Berman's office, however, the plaintiff's mother, Mrs. Stillwagen, who knew the situation, had conferred with Mr. Resnick, a Bridgeport attorney, and he went to New York and interviewed Chatlos in an effort to persuade him not to insist on all of the property being turned over. Chatlos refused to make any concessions and Mr. Resnick advised the plaintiff that she did not need to sign her property over but if she didn't, probably Seifert would go to jail. The defendant had made no threats of a prosecution to

Mr. Resnick but had spoken of the fact that he could look to the surety company on Seifert's bond.

At about the same time that Mr. Resnick had his interview with the defendant, Mr. and Mrs. Seifert went to Berman's office and there Mr. Seifert signed the agreement, Exhibit 1, and the confession of judgment, Exhibit F. By the terms of the agreement, Seifert agreed to deed the two pieces of real estate to the defendant, to transfer to him his automobile (which he might redeem and which he did later redeem, on the payment of $200) and to assign to him their claim for damages. It was further agreed, it being understood that Seifert would continue in Chatlos' employ, that Chatlos should deduct $20 per week from his wages until that plus the value of the property would make good the defalcation, the amount of which was still unascertained. In consideration thereof Chatlos agreed that he would take no further action or proceeding to collect the amount due him. Mrs. Seifert was not asked to sign this agreement because Mr. Berman still did not know that the real estate stood in her name.

After these documents were signed, Mr. and Mrs. Seifert went to Chatlos' office. There it appeared from the deeds which the Seiferts produced, so that a description of the properties might be had, that on March 22, 1933, Mr. Seifert had conveyed an undivided one-half interest in the properties to Mrs. Seifert. The defendant's secretary who was preparing the deeds assumed erroneously that title still stood one-half in each and accordingly both Mr. Seifert and the plaintiff signed warranty deeds conveying the real estate to the defendant. The defendant went into possession of the real estate and in August, 1936, he sold the Bridgeport property for $4,800. He still owns the lot in Fairfield. Mr. Seifert has continued to pay the defendant $20 per week down to the present time.

The total amount of Seifert's defalcation was in excess of $10,000. In deeding the property the plaintiff was not motivated primarily by fear of her husband being arrested and prosecuted but rather by the fact that at the time it seemed to her only fair that property which had been paid for by her husband should be used partly to make good what he had embezzled and also by the hope that the making of such restitution would result in the continuance of his employment. She would have made the conveyances even though she had had no fear of her husband being arrested.

In 1936, the plaintiff was divorced from Seifert. She made no demand on the defendant for a return of the property or its value until July 25, 1939. This action is brought to recover damages apparently on the broad theory of unjust enrichment and the claim of the plaintiff is threefold. It is, first, that there was no consideration for the transfer, second, that it was procured by duress and third that it was procured by the defendant in the compounding of a felony.

So far as the claim of lack of consideration is concerned, it is obvious that there was legal and adequate consideration in that the defendant agreed to forbear and did forbear to take any other proceedings to enforce his claim against Seifert.

The conveyances were not procured by coercion or duress because in the first place the defendant made no threats except threats to pursue his civil remedy and he did not carry those so far as to abuse those lawful means. His threats therefore, were not wrongful. 5 *Williston, Contracts* (Rev. ed. 1937) §§1606, 1607. And, in the second place and more important still, such threats as he made did not induce the plaintiff to enter the transaction under the influence of such fear as precluded her from exercising her free will and judgment. In the whole transaction she acted calmly and deliberately and entirely voluntarily. She would have made the conveyances whether the defendant had threatened to collect from the bonding company or not and, indeed, had made up her mind to make them before the defendant made that threat. Under such circumstances, clearly the conveyances were not procured by duress. *Restatement, Contracts* §492, p. 941.

In so far as the plaintiff relies upon the claim that the conveyances were made in the compounding of a felony, she is met by the principle of law that neither law nor equity will give relief to one who is *particeps criminis*. *Funk vs. Gallivan,* 49 Conn. 124; *McMahon vs. Smith,* 47 id. 221; *Town of Sharon vs. Gager,* 46 id. 189. If the conveyances in question had been made in the compounding of a felony, the plaintiff was *in pari delicto* with the defendant and therefore can not recover.

Finally, if there were any duress exercised by the defendant, it was exercised in the compounding of a felony and was inextricably intertwined with it. The transaction occurred in New York and whether the plaintiff has any cause of action

for damages for duress depends upon the law of the jurisdiction wherein the duress was committed. The law of New York is definitely settled that, in such a case, that is, where one party has made a payment under the duress of the threat of a prosecution for crime he may not recover that payment because the parties are *in pari delicto* and the law will leave them where it finds them. *Union Exchange National Bank vs. Joseph,* 231 N.Y. 250; *Haynes vs. Rudd,* 102 id. 372.

Judgment may enter for the defendant to recover of the plaintiff his taxable costs.